# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KIRBY LINDLEY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 19-11414** |
| **PUCCINO'S, INC. AND PRO SIGNS & GRAPHICS LLC** | **SECTION: "S" (5)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that defendant's **Motion to Dismiss First Amended Complaint** (Rec. Doc. 25) is **GRANTED in part and DENIED in part**, and plaintiff's federal common law claims and Texas state law claims are dismissed.

## BACKGROUND

Plaintiff Kirby Lindley is a state pageant title holder, including the former Miss Texas Teen USA 2017 and runner up for Miss Texas USA 2019, and a professional working model. She also has a social media presence including 17,000 Instagram followers.

Puccino's, Inc. ("Puccino's") is a Metairie, Louisiana based coffee house, and Pro Signs & Graphics LLC ("Pro Signs") is a Kenner, Louisiana advertising company which was retained by Puccino's in an advertising campaign known as the "Farmer's Daughter" campaign.

In connection with the campaign, Pro Signs created printed material which included the following image in which Lindley's head was cropped from a modeling image and placed on another model's body:



Lindley did not authorize this use of her image, and first learned of it through social media. Pro Signs has acknowledged that it misappropriated the image. Lindley subsequently filed suit against the defendants alleging, <u>inter alia</u>, violations of the Lanham Act, Louisiana state law claims under 2315, and for misappropriation/theft, unjust enrichment, and violations of the Louisiana tradmark laws and the Louisiana Unfair Trade Practices Act, Texas state law claims for violations of the Texas law of the right of privacy and publicity, Texas law of unfair business practices and competition, and Texas and common law trademark laws, as well as common law causes of action for violation of her right privacy, right of publicity, unjust enrichment, misappropriation, and unfair competition and trade practices.

Puccino's has moved to dismiss plaintiff's claim under Federal Rule 12(b)(1), for lack of jurisdiction, and Federal Rule 12(b)(6), for failure to state a claim. Plaintiff opposes the motions.

## DISCUSSION

**Legal Standards**

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v. United States, 281 F.3d 158, 161 (5th Cir.2001). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. In a 12(b)(1) motion, the party asserting jurisdiction bears the burden of proof that jurisdiction does in fact exists. Id.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. "To survive a Rule 12(b)(6) motion to dismiss, 'enough facts to state a claim for relief that is plausible on its face' must be pleaded." In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atl. v. Twombly, 550 U.S. 544 (2007). A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 555 (citations omitted). The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). However, the court need not accept legal conclusions

couched as factual allegations as true. Iqbal, 556 U.S. at 678.

**Lanham Act Claim**

In its motion to dismiss, Puccino's argues that Lindley's complaint fails to state a claim because she has not pleaded any facts to prove "an injury to a commercial interest in reputation or sales," as required by Lexmark International, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014). Puccino's also cites Lexmark for its contention that plaintiff's claims fail because she has not pleaded that anyone actually withheld trade from her. The essence of these aruments are that plaintiff has not adequately alleged that her claim falls within the ambit of the Lanham Act, and thus constitute a jurisdictional challenge based on standing. Plaintiff argues in opposition that she has in fact pleaded an injury to her reputation, and that Lexmark does not require that she prove trade was actually withheld from her to state a cause of action under the Lanham Act.

In Lexmark, the Supreme Court addressed the requirements for standing to sue under the Lanham Act. After surveying the state of the law on standing, the Supreme Court concluded that "a direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue" under the Lanham Act. The zone of interests test requires that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." 572 U.S. at 131–32. "Second, . . . a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." Lexmark, 572 U.S. at 132. Thus, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly

4

from the deception wrought by the defendant's advertising. . . . " Id. at 133. "[A]lthough diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under § 1125(a)." Id. at 138.

Applying those principles to Lindley's false endorsement claim under § 1125(a), Lindley has demonstrated that she is within the class of plaintiffs authorized to sue under § 1125(a). Lindley has pleaded that she is a working model with a commercialized likeness who has been and will continue to be retained to promote and provide endorsements. She further alleges that she suffered an injury to the value of her likeness due to defendants' misappropriation of her likeness in connection with the Farmer's Daughter campaign. Specifically, she alleges that defendants injured the commercial and reputational value of her likeness by causing consumer confusion through giving the false impression that she endorsed or agreed to participate in the offensive and sexually suggestive "Farmer's Daughter" campaign. While Lindley does not allege that a specific entity withheld trade from her, "[w]hen a defendant harms a plaintiff's reputation by casting aspersions on its business, the plaintiff's injury flows directly from the audience's belief in the disparaging statements. Courts have therefore afforded relief under § 1125(a) not only where a defendant denigrates a plaintiff's product by name, . . . but also where the defendant damages the product's reputation. . . ." Lexmark, 572 U.S. at 137-38 (citations omitted). Thus, Lindley has alleged an injury to her reputation proximately caused by defendants' misappropriation. Accordingly, her claim comes within the ambit of the Lanham Act, and is not subject to dismissal under the rule of Lexmark.

Moreover, the court observes that numerous other courts have found a false endorsement

5

claim under the Lanham Act claim has been stated when a model has her likeness misappropriated to advertise a product or service without the model's consent. See, e.g., Arnold v. Treadwell, 642 F. Supp. 2d 723 (E.D. Mich. 2009); Lancaster v. Bottle Club, LLC, 2017 WL 3008434, at *7 (M.D. Fla. July 14, 2017); Johnson v. Park Ave. Rest. Corp., 2018 WL 1535267, at *5 (D.N.J. Mar. 28, 2018); Bondar v. LASplash Cosmetics, 2012 WL 6150859, at *7 (S.D.N.Y. Dec. 11, 2012).

The court also rejects Puccino's argument that because it did not create the offending advertisement, but rather that Pro Signs did, plaintiff cannot state a claim against Puccino's. The Lanham Act, by its terms, is not limited to content creators, but applies to

> **Any person who**, on or in connection with any goods or services, or any container for goods, **uses in commerce** any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or **false or misleading representation of fact** . . . .

15 U.S.C. § 1125(a)(1)(emphasis added).

Plaintiff has alleged that Puccino's used in commerce false or misleading representations of fact, namely, the suggestion that Lindley endorsed the Puccino's Farmer's Daughter campaign. Accordingly, Puccino's is potentially liable under the statute.

**Federal Common Law Claims**

Puccino's also argues that because there is no general federal common law, plaintiff's federal common law claims should be dismissed. Generally, "there is no federal common law of unfair competition." Water Techs. Corp. v. Calco, Ltd., 850 F.2d 660, 670 (Fed. Cir. 1988)(citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78–79 (1938) ("There is no federal general

common law."). Rather, a federal claim must "rest upon a federal statute which defines and provides relief" for the type of tort sued upon. Id. In some limited instances, the courts have formulated "federal common law": "when a federal rule of decision is necessary to protect uniquely federal interests" and "when Congress has give the courts the power to develop substantive law." Texas Industries, Inc. v. Radcliff Materials. Inc., 451 U .S. 630, 640 (1981)(internal quotations and citations omitted). "[F]ederal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." Id. at 641. None of plaintiff's purported federal common law claims – for violations of her right to privacy, publicity, unjust enrichment, misappropriation, and unfair competition and trade practices – fall into any of these categories.

Plaintiff cites Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373 (1st Cir.1980), repudiated on other grounds by Miller Brewing Co. v. Falstaff Brewing Corp., 655 F.2d 5, 8 (1st Cir. 1981) for the premise that the Lanham Act does not preempt her federal common law claims. However, Keebler, which was decided prior to the Supreme Court's decision in Texas Industries, simply stated that the Lanham Act did not preempt consumer-oriented common law remedies, recognizing that the Lanham Act, first enacted in 1946 after a body of federal common law on unfair trade practices had developed, "was designed to expand the rights of a 'purely commercial class' against the unscrupulous practices of their business competitors," not to provide a remedy to consumers. As such, Keebler has generally been interpreted to mean that "the Lanham Act does not in general preclude state unfair competition statutes from operating."

Keep a Breast Found. v. Seven Grp., 2011 WL 3240756, at *3 (S.D. Cal. July 28, 2011) (quoting Attrezzi, LLCv. Maytag Corp., 436 F.3d 32, 41 (1st Cir. 2006); see also, 20th Century Wear, Inc. v. Sanmark-Stardust Inc., 747 F.2d 81, 92 n.15 (2d Cir. 1984); Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 2017 WL 74729, at *8, n.7 (S.D.N.Y. Jan. 4, 2017). However, as to those entities and claims the Lanham Act was designed to protect, pursuant to Erie, there is no federal common law, except for pre-Lanham Act decisions which "while suggestive, are not controlling." Keebler, 624 F.2d at 373.

Accordingly, Lindley's federal common law claims are subject to dismissal.

**Amount in Controversy Requirement**

Puccino's has also moved to dismiss plaintiff's claims arguing that she has not adequately pleaded that the amount in controversy requirement is met. Because the court finds that federal question jurisdiction exists, and exercises supplemental jurisdiction over plaintiff's state law claims, this argument is moot.

**Mississippi State Law Claims**

Puccino's also seeks to dismiss Lindley's claims under Mississippi law, arguing that Louisiana law applies to this case. It is undisputed that the alleged tortious acts occurred in Louisiana, but Lindley experienced emotional distress at her home in Texas, where she is domiciled.

"It is well-settled that choice of law issues for supplemental state law claims . . . are governed by the forum state in which the federal court is sitting." Janvey v. Brown, 767 F.3d 430, 434 (5th Cir. 2014)

8

In Louisiana,

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

Article 3515 instructs that the state whose policies would be most seriously impaired is determined

> by evaluating the strength and pertinence of the relevant policies of all involved states in light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

In the instant case, all of the complained of conduct occurred in Louisiana. Both defendants reside and have their places of business in Louisiana. The only connection Texas has to this dispute is that Lindley experienced mental distress at her domicile in Texas. Texas has no policy interest in the outcome. In contrast, Louisiana's interest in deterring wrongful conduct weighs in favor of a choice of Louisiana law. Considering all of these factors, Louisiana law should apply to this dispute.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's **Motion to Dismiss First Amended**

9

**Complaint** (Rec. Doc. 25) is **GRANTED in part and DENIED in part**, and plaintiff's federal common law claims and Texas state law claims are dismissed.

New Orleans, Louisiana, this  25th   day of September, 2019.

                                      **MARY ANN VIAL LEMMON**
                                    **UNITED STATES DISTRICT JUDGE**